O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-05767 ODW (JCx) | Date | November 15, 2010 |
|---|---|---|---|
| Title | *Mejia v. Comonfort* | | |

| Present: The Honorable | Otis D. Wright II, United States District Judge | |
|---|---|---|
| Raymond Neal | Not reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Not present | Not present | |

**Proceedings (In Chambers):** Order GRANTING WITH PREJUDICE Plaintiff's Motion to Dismiss Defendant's Counterclaim [25]

     Currently before the Court is Plaintiff Maria Mejia's ("Plaintiff") September 17, 2010 Motion to Dismiss Counterclaim of Defendant Joseph Comonfort ("Defendant"). (Dkt. # 25.) Having considered the arguments made in support of the instant Motion, the Court deemed this matter appropriate for decision without oral argument, and vacated the November 15, 2010 hearing. *See* FED. R. CIV. P. 78; L.R. 7-15. For the following reasons, the Court **GRANTS WITH PREJUDICE** Plaintiff's Motion.

## I. BACKGROUND

     Defendant owns rental property in Los Angeles, California comprised of ten units, spread amongst one four-plex and three duplexes. (Complaint "Compl." ¶ 7.) Plaintiff (with her husband) resided in a two-bedroom, upper-floor unit in the four-plex (the "upper unit") for twelve (12) years up until just after the institution of this lawsuit, and paid rent in the amount of $560.71 per month. (Compl. ¶¶ 5, 7, 11.) Two stairways provide access to the upper unit, including one steep, dark, carpeted fifteen (15)-step internal stairway and one seventeen (17)-step external cement stairway. (Compl. ¶ 13.) Plaintiff is sixty-two (62) years old, and suffers from disabilities including heart problems, diabetes, renal failure, nerve damage to both of her arms, blindness in her left eye, and poor vision in her right eye. (Compl. ¶ 12.) Plaintiff must attend dialysis three (3) times a week, and suffers such fatigue as a result that she "hardly has use of her legs." (Id.) Accordingly, Plaintiff began using a wheelchair for mobility approximately two or three years ago. (Id.)

     In light of her disabilities, Plaintiff opted to access her upper unit by way of the carpeted, shorter internal stairway. (Compl. ¶ 13.) However, after her confinement to a wheelchair, Plaintiff was forced to either rely on her husband for help, or, if he was unavailable, crawl up and down the stairs on her own. (Compl. ¶ 13.) Because Plaintiff's husband is the couple's only source of income, he was often at work and therefore unavailable to help his wife access the upper unit. (Compl. ¶ 14.) Even when available, Plaintiff's husband's own medical problems made it difficult

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-05767 ODW (JCx) | Date | November 15, 2010 |
|---|---|---|---|
| Title | *Mejia v. Comonfort* | | |

for him to safely help Plaintiff, and he took to "wrapping a belt around [Plaintiff's] waist" to wither "drag[] her up the steps" or "to hold her back from falling while they descended." (Id.) "When forced to crawl up or down the stairs on her own . . . three (3) or four (4) times a week . . . [Plaintiff] [] [got] scratches on her knees, which [was] bad for her diabetes." (Compl. ¶ 15.) Plaintiff's attempts to navigate the stairs on her own resulted in two falls, causing injuries to her back, foot, and head. (Compl. ¶ 17.) While Plaintiff used a wheelchair outside of the upper unit, neither she nor her husband were able to lift the chair up the stairs, leaving Plaintiff reliant on a walker or cane while in the upper unit, and after dialysis, confined to a diaper until her husband returned from work to help her to the restroom. (Compl. ¶ 16.)

In mid-May, 2010 a ground-floor, one-bedroom unit became available in Defendant's complex (the "first ground-floor unit"). Although smaller than the upper unit, the first ground-floor unit had only three steps leading up to it, making it more safely and easily accessible by Plaintiff. (Compl. ¶ 18.) Plaintiff's husband thereafter approached Defendant and asked if he would allow them to transfer to that unit. (Compl. ¶ 19.) According to Plaintiff, Defendant consented to the transfer on the condition that Plaintiff and her husband pay increased rent in the amount of $600 per month. (Id.) Plaintiff's husband agreed to Defendant's condition, after which Defendant invited Plaintiff's husband to view the unit, and advised him that they "would have to wait until June 10, 2010 to move into the unit to allow time for cleaning and cockroach fumigation." (Id.)

On June 4, 2010, Plaintiff's husband paid Defendant $600, Defendant confirmed the June 10, 2010 move-in date, and Plaintiff and her husband packed up all their belongings. (Compl. ¶ 20.) When June 10, 2010 arrived, Plaintiff returned home from dialysis and asked Defendant to give her the key to the first ground-floor unit. (Compl. ¶ 21.) Defendant told Plaintiff he would give her the key later, after which Plaintiff, "weak and dizzy from [] dialysis," "crawled up the stairs to her unit and went to sleep." (Id.) Two days later, Plaintiff's husband went to Defendant's office and again requested the key to the first ground-floor unit, at which point, Defendant allegedly informed Plaintiff's husband, despite his pleading on his wife's behalf, that he was no longer going to allow the transfer. (Compl. ¶ 22.) On or about June 30, 2010, the Plaintiff received a money order in the amount of $55.62 from Defendant, which she did not cash. (Compl. ¶ 23.) That same day, the apartment directly below Plaintiff's, with the same floor plan as the upper unit, also became vacant (the "second ground-floor unit"). (Compl. ¶ 24.) On three separate occasions during the following month, Defendant failed to respond to Plaintiff's counsel's requests for a unit transfer to either ground-floor unit as a reasonable accommodation for Plaintiff's disabilities. (Compl. ¶ 25.)

Plaintiff filed suit against Defendant in this Court on August 3, 2010 for discrimination and failure to appropriately accommodate disability, specifically asserting claims for violation of the Fair Housing Amendments Act ("FHAA") of 1988 (42 US.C. § 3601, *et seq*.), the California Fair Employment and Housing Act (California Government Code §12955, *et seq*.), the California Unruh

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-05767 ODW (JCx) | Date | November 15, 2010 |
|---|---|---|---|
| Title | *Mejia v. Comonfort* | | |

Civil Rights Act (California Civil Code § 51, *et seq*.), the California Disabled Person's Act (California Civil Code § 54.1), and common law negligence. (Dkt. # 1; Compl. ¶¶ 33, 38, 42, 51.) Plaintiff also filed an *Ex Parte* Application for a Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction, which this Court granted on August 4, 2010. (Dkt. #s 3, 5.) Though Defendant was properly served with notice of the hearing on the Order to Show Cause, Defendant failed to file an opposition or appear, resulting in the issuance of a preliminary injunction enjoining Defendant from renting the lower level apartments to anyone other than Plaintiff throughout the pendency of this litigation. (Dkt. #s 8, 11, 12.)

On August 24, 2010, Defendant filed an Answer to the Complaint. (Dkt. # 14.) That same day, the parties stipulated to a partial settlement of this matter, as Defendant permitted Plaintiff and her husband to move into the second ground-floor unit. Defendant then filed an Amended Answer and Counterclaim alleging that Plaintiff's move caused him undue burden and seeking an order requiring Plaintiff to pay either a lump sum or an increased rental amount to mitigate that burden. (Dkt. #s 17, 21, 22.) This Motion to Dismiss Defendant's Counterclaim followed. (Dkt. # 25.)

## II. LEGAL STANDARD

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). For a complaint to sufficiently state a claim, its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id*. Rather, to overcome a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotations omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with . . . liability, it stops short of the line between possibility and plausibility of entitlement of relief." *Id*. (citation and quotations omitted).

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them, and construe the complaint in the light most favorable to the nonmoving party. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *McNamara-Blad v. Ass'n of Prof. Flight Attendants*, 275 F.3d 1165, 1169 (9th Cir. 2002). Dismissal under Rule 12(b)(6) is only appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*,

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-05767 ODW (JCx) | Date | November 15, 2010 |
|---|---|---|---|
| Title | *Mejia v. Comonfort* | | |

901 F.2d 696, 699 (9th Cir. 1990). That is, "a claim will not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can provide no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1975); *Parks Sch. Of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

In general, unless the court converts a Rule 12(b)(6) motion into a summary judgment motion, it cannot consider material outside the complaint. *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.,* 102 F.3d 1524, 1537 (9th Cir.1996), *rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986, (9th Cir. 1999); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

Under Federal Rule of Civil Procedure 15(a), leave to amend a pleading "shall be freely given when justice so requires." "Rule 15(a) is very liberal . . . But a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist West, Inc*., 465 F.3d 946, 951 (9th Cir. 2006) (citations omitted).

### III.  DISCUSSION

The crux of Plaintiff's Motion to Dismiss is that Defendant neither bases his counterclaim on a cognizable legal theory, nor does he allege facts sufficient to state a claim under the legal theory (cognizable or not) that he asserts. (Motion to Dismiss "MTD" at 9, 11.) Plaintiff maintains that Defendant's counterclaim for "compensation" to "mitigate the undue burden" of her requested accommodation is not a legally recognized claim, and that an "undue burden" is simply a "legally recognized defense to the provision of a requested accommodation." (MTD at 9.) Defendant, for his part, urges the Court that the state and federal housing laws do not "create a one-way street running in favor of the tenant only," and asks the Court to recognize and ultimately exercise its "equitable powers" to require Plaintiff to pay increased rent for her new apartment. As discussed below, there are a number of flaws in Defendant's reasoning.

Unlawful discrimination under both federal and state housing law might include *either* "a refusal to permit, at the expense of a handicapped person, reasonable *modifications* of existing premises . . . necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where [] reasonable [,] condition . . . modification on the renter agreeing to restore" the premises to their prior condition, *or* "a refusal to make reasonable

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-05767 ODW (JCx) | Date | November 15, 2010 |
|---|---|---|---|
| Title | *Mejia v. Comonfort* | | |

*accommodations* in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. §§ 3604(f)(3)(A), (B) (emphasis added). *See also* Cal. Civ. Code §§ 54.1(b)(3)(A), (B) (providing that "any *person* renting [or] leasing or otherwise providing real property for compensation shall not refuse to make reasonable *accommodations* in rules, policies, practices or services, when those accommodations may be necessary to afford *individuals* with a disability equal opportunity to use and enjoy a dwelling," and noting that the "person" providing the rental property is charged with the expense of making reasonable *modifications* to the existing premises, subject to a possible condition that the individual with the disability agree to restore the premises to their original state at the end of the tenancy) (emphasis added).

Accommodations must be made unless the landlord can demonstrate resulting undue financial and administrative burdens or a fundamental alteration in the nature of a program. *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 410, 412 (1979). *See also* 45 C.F.R. § 84.12(a); *United States v. Cal. Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1417 (9th Cir. 1994) (using law applicable to Rehabilitation Act to interpret FHAA provisions); *Vinson v. Thomas*, 288 F.3d 1145, 1152 n. 7 (9th Cir. 2002) (using law applicable to the Americans with Disabilities Act ("ADA") to interpret Rehabilitation Act provisions). "The question of whether a particular accommodation is reasonable 'depends on the individual circumstances of each case' and 'requires a fact-specific, individualized analysis of the *disabled individual's circumstances* and the accommodations that might allow him to'" equally enjoy the rented premises. *Vinson v. Thomas*, 288 F.3d at 1154 (emphasis added). *See also Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1048 (9th Cir. 1999). The fact that an accommodation requires a certain amount of expenditure on the part of the landlord does not, however, render that accommodation unreasonable. Indeed, "accommodations need not be free of all possible cost to the landlord . . .." *Giebeler v. M&B Assoc.*, 343 F.3d 1143, 1152 (9th Cir. 2003) (opining that the FHAA "anticipated that landlords would have to shoulder certain costs" because the statute contains no exemption for the costs of accommodations).

As a preliminary matter, the only facts that Defendant technically alleges in "support" of his undue burden "Counterclaim" is that he allowed Plaintiff to move to a vacant downstairs unit of comparable size to the one she previously inhabited without raising her rent. While Defendant's Opposition is rife with examples of the injustice he feels he has been forced to endure as a result of Plaintiff's move, including the combined effects of *his own* financial difficulties and his decision three years ago to partially renovate those units that Plaintiff did not inhabit, Defendant failed to include any of those "allegations" in his Counterclaim such that the Court might have appropriately considered them at this time. Even could the Court consider the "allegations" in Defendant's Opposition to the Motion to Dismiss and accompanying Declaration to satisfy the operable pleading standards, Defendant still failed include specific information regarding rental amounts and whether or not there were other potential renters for any of the units such that the conclusion that any undue

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-05767 ODW (JCx) | Date | November 15, 2010 |
|---|---|---|---|
| Title | *Mejia v. Comonfort* | | |

burden resulting from Plaintiff's move might be ascertained.[1] Accordingly, Defendant fails to allege facts sufficient to state any cognizable claim. On this basis alone, dismissal is warranted.

As indicated above, Rule 15(a) ordinarily requires the Court to liberally grant a party leave to amend a pleading upon dismissal for failure to allege sufficient facts. *See* Fed. R. Civ. P. 15 (a). However, where a party pursues an uncognizable claim, no amount of amendment can cure the deficiency, rendering the exercise futile and unnecessary. *See AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d at 951. Here, the "undue burden" provision constitutes nothing more than an exception to the responsibility to reasonably accommodate disabled individuals, and thus, Defendant's claim for compensation is not cognizable under the law applicable to this case.

The Court has been unable to locate, nor has Defendant provided citation to, any authority establishing a viable claim for the "compensation" he seeks for allowing Plaintiff to move downstairs. Defendant unsuccessfully misrepresents operable statutory language by claiming that "the Unruh Act specifically contemplates that, under appropriate circumstances, the tenant might be required to shoulder the expense associated with the *accommodation*, or at least share in the expense with the landlord." (Opp'n at 11, emphasis added.) Indeed, as quoted above, both federal and state law specifically provide for a limited cost-sharing arrangement only in cases where a disabled person requests *modifications* to existing facilities that must be restored following his or her tenancy. Conspicuously absent from the sections wherein *accommodations* are mentioned is any similar language. To the contrary, reasonable costs associated with accommodations seem to have been assigned to landlords. *See Giebeler v. M&B Assoc.*, 343 F.3d at 1152. Because Defendant does not even attempt to assert that Plaintiff's request to move downstairs given her uncontested disability was, in itself, unreasonable, it would seem that his request for "compensation" to mitigate the burden of what he recognized as *accommodating* Plaintiff is in fact a disguised attempt to retroactively pass on to Plaintiff the costs of the renovations that he believed were necessary in the downstairs unit roughly three years ago.

Defendant notes that, had he "failed to stipulate to the move, the [C]ourt would have held a hearing to determine whether the request for accommodation was reasonable . . . and upon what conditions to effect justice and equity." Defendant's invocation of the Court's "equitable powers" is particularly interesting however, given Defendant's own conduct throughout the development and litigation of this case. First, it was Defendant who failed to appear for the hearing on the Preliminary Injunction ultimately imposed. While Defendant is correct that "an injunction [should] not issue[] as a matter of course," he himself chose to squander his opportunity to "invo[ke] the

---

[1] In fact, Defendant's own admission that he has for some time faced problems leasing all of his vacant units, without regard to or mention of their renovation status, contradicts his claim that Plaintiff's move has had any detrimental effect on him.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-05767 ODW (JCx) | Date | November 15, 2010 |
|---|---|---|---|
| Title | *Mejia v. Comonfort* | | |

equitable jurisdiction of this [C]ourt" as he notes Plaintiff has. (Opp'n at 5-6.) At this point, the Court wonders whether Defendant's claim, if cognizable, would now be moot, as Plaintiff has already moved and the Preliminary Injunction preserving the availability of the downstairs units is no longer in effect. Thus, there is no longer an operative equitable order upon which the "equitable" conditions Defendant requests might be placed.

Moreover, Defendant now requests the very relief which he himself accepted and then rejected before Plaintiff felt forced to seek judicial intervention. Indeed, Plaintiff provided Defendant with a rental payment of over 7% more per month in exchange for permission to move to the *smaller* first ground-floor unit, after which Defendant returned to Plaintiff a money order for her apparent "overpayment" and refused to allow the transfer.[2] Under such circumstances, it would hardly be "equitable" for the Court to order Plaintiff to do exactly that which was already offered and returned. *See, e.g., Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991) (noting that once a party offers to satisfy the other's demand, there is no dispute over which to litigate); *Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986) (noting that a litigant's stake in a matter disappears upon an offer of full settlement and that "federal courts do not sit simply to bestow vindication in a vacuum").

## IV. CONCLUSION

In light of the foregoing, the Court **GRANTS WITH PREJUDICE** Plaintiff's Motion to Dismiss Defendant's Counterclaim.

IT IS SO ORDERED.

: 00

Initials of Preparer  RGN

---

[2] Because the Court may consider documents mentioned in the Complaint, (*see In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d at 986; *Lee v. City of Los Angeles*, 250 F.3d at 689), including the receipt Defendant provided for Plaintiff's higher rental payment with a note indicating the impending move to the first ground-floor unit (Dkt. # 3, Ex. 1-23), the Court views with skepticism Defendant's claim that *he* agreed to allow Plaintiff to move to a downstairs unit if she agreed to "pay additional rent to help mitigate the increased financial burden to him, but *she* refused." (Opp'n at 2, emphasis added.)